Kurtiss A. Jacobs, LL.M. # 218950
Donald Sherrill # 266038
151 Bernal Road Suite 8
San Jose CA 95119-1306
Telephone: (408) 362-2270
Facsimile: (408) 362-2299

Attorneys for Defendant Hunt & Henriques
File No. 1394590

**United States District Court**

**Eastern District of California**

| Kuiana Taylor, | Case 20-cv-2309-TLN-KJN |
|---|---|
| Plaintiff, | **Hunt & Henriques's Answer to Complaint** |
| vs. | |
| Hunt & Henriques, Inc., | |
| Defendant. | |

Hunt & Henriques (H&H), was erroneously sued as Hunt & Henriques, Inc.

**INTRODUCTION RE: WRONG DEFENDANT**

Hunt & Henriques, Inc. (HHI), is a recently-formed entity that has no employees and has never conducted a single business transaction; plaintiff's counsel knows this from prior litigation. H&H acknowledges making legal attempts to collect the financial obligation at issue in this action; presumes that plaintiff's counsel intended to name the entity that made those collection attempts; and in the interest of judicial economy, generally appears in order to avoid the time and cost of obtaining a dismissal of HHI with leave to add H&H.

**DENIALS AND ADMISSIONS**

NATURE OF ACTION

1. H&H admits that plaintiff brings this action seeking redress under the

statutes cited, but denies that any violations of those statutes occurred.

## JURISDICTION AND VENUE

2. H&H admits that this action is brought under the FDCPA and the RFDCPA, but denies that this action arises under those or any statutes inasmuch as H&H committed no violations of the FDCPA or RFDCPA.

3. Admit.

4. Admit.

5. Admit.

## PARTIES

6. On information and belief, admit. But plaintiff Kuiana Taylor (Taylor) has superior knowledge of all facts alleged in this paragraph; and while H&H is willing to accept these allegations as true for purposes of litigating this action only, H&H objects to any collateral estoppel effect being given these facts in any future action.

7. Deny. As stated in the introduction re: wrong defendant, Hunt & Henriques, Inc., is a recently-formed entity with no employees that has never conducted a single business transaction. Substituting the entity "Hunt & Henriques" into the allegations in this paragraph (and all paragraphs), H&H answers as follows: Admit all allegations in the first sentence. Admit all allegations in the second sentence. Admit that H&H regularly and systematically does business in California; deny that H&H does business "across the United States," and Taylor's counsel knows this allegation to be false. Admit that H&H regularly attempts to collect defaulted financial obligations owed by persons residing in California. Object to the terms "debts" and "consumers" in the last sentence as having precise and narrow meanings under the federal statute at issue in this action. H&H collects overdue financial obligations for its clients, some of which in the past have proved to be "debts" within the meaning of 15 United States Code § 1692a and some of which have proved

not to be "debts"; and only rarely does the purpose for which a financial obligation was incurred, arise in any context.

## FACTUAL ALLEGATIONS

8. Admit that Taylor had a balance on a Synchrony Bank credit card. H&H has no information regarding the purpose for which Taylor used her Synchrony Bank credit card and on that basis denies, although H&H acknowledges that the single transaction that appears on Taylor's billing statements is a charge in favor of "San Francisco SPCA." H&H admits that the charge made on the Synchrony Bank credit card was for $ 1,782.25.

9. H&H has no information regarding whether Taylor's financial difficulty was "unforeseen," and on that basis denies. H&H denies that Taylor "eventually" defaulted on her Synchrony Bank credit card account, in that Taylor never made a single payment on the account. H&H objects to the parenthetical characterization of the Synchrony Bank credit card account as "subject debt," as H&H has insufficient information to determine whether the financial obligation was incurred *primarily* for personal, family, or household use.

10. Deny that Taylor "started receiving phone calls from" H&H in January 2020, as H&H's first outbound telephone call to Taylor was made on October 1, 2020, in response to a voice message left by plaintiff earlier the same day.

11. Deny that H&H "stated that the balance on which it was attempting to collect had increased to approximately $ 2,100.00 because of interest." Admit that H&H stated that interest and fees may have accrued.

12. H&H objects to the entirety of paragraph 12 as violating Federal Rule of Civil Procedure 8 and within the scope of FRCP 12(f) as it contains no material facts. H&H's client had authorized H&H to file a lawsuit if H&H were unable to obtain voluntary repayment of the defaulted financial

obligation, so any statement that H&H may have made regarding a lawsuit would have been a permitted statement under all statutes at issue in this action. Without waiving this objection, H&H responds as follows: Deny that H&H explicitly threatened Taylor with a lawsuit if she did not make a payment arrangement; admit that it would have been reasonable for Taylor to infer that she could face litigation if she did not make a payment arrangement.

13. H&H admits that Taylor agreed to an arrangement calling for monthly payments, but clarifies that the agreement was for one payment of $ 121.57 followed by payments of $ 120.00 per month; however, after making the $ 121.57 payment, Taylor's next two payments exceeded the minimum due, being for $ 126.00 rather than $ 120.00.

14. H&H denies the substance and the implications of this paragraph in their entirety including the "phone calls…ceased" allegation being placed after the "agreed to an arrangement" allegation; as at the time that the payment arrangement was reached, H&H had made *zero* calls to plaintiff, *ever*.

15. Deny.

16. Deny.

17. Deny, but admit that H&H did negotiate the check eventually received for the payment that had been due October 31.

18. Deny every allegation in this paragraph both as individual allegations and as to the effect of the paragraph as a whole. Admit that H&H did use the phrase "formal agreement."

19. Deny that Taylor asked H&H to stop calling, but admit that Taylor told H&H to take her work number off of the file. Deny that Taylor advised that she was not interested in altering the terms of her agreement.

20. H&H admits making a call to Taylor's employer on November 16, 2020.

21. Deny.

22. H&H has no information regarding what "the staff secretary" told Taylor, and on that basis denies.
23. H&H objects to the entire paragraph as being premised on two false allegations: (1) that H&H "disclosed this information"; and (2) that Taylor had been making payments at the time that H&H began attempting to contact her.

## DAMAGES

24. Admit that Taylor may have been "concerned"; deny that she "had her rights violated." Admit that Taylor retained counsel. Deny that Taylor could have "retained counsel to compel Defendant to cease its collection activity," as the FDCPA and RFDCPA are not defenses. *See* 15 United States Code § 1692k; California Civil Code § 1788.30.
25. Deny that Taylor is forced to expend energy and/or time consulting with attorneys to put an end to H&H's unlawful collection practices, as H&H has engaged in no unlawful collection practices.

## COUNT I

Fair Debt Collection Practices Act (15 USC § 1692 *et seq.*)

26. H&H incorporates all prior paragraphs herein.
27. Whether Taylor is a "consumer" as defined by 15 USC § 1692a(3) depends on whether the financial obligation that H&H is collecting is a "debt" as defined by § 1692a(5). As stated in H&H's answer to paragraph 28, H&H has insufficient information to admit that allegation, and on that basis denies this allegation.
28. H&H has insufficient information to admit that Taylor's single purchase using her Synchrony credit card account was primarily for personal purposes as provided by 15 USC § 1692a(5), and on that basis denies.
29. H&H has insufficient information to admit that the financial obligations that it "regularly collects" are "debts" as defined by 15 USC § 1692a(5). H&H's

business is limited to collecting *defaulted financial obligations* owed to others, but these defaulted financial obligations are not "debts" as defined by § 1692a(5) unless incurred primarily for personal, family, or household use. Of the many defaulted financial obligations assigned to H&H for collection each year, few are ever alleged to have been incurred primarily for personal, family, or household use and a significant number of those so alleged later prove to have been incurred primarily for purposes *other* than personal, family, or household use. On this basis, H&H denies the allegation.

### a. FDCPA § 1692b

30. 15 USC § 1692b speaks for itself and H&H objects to Taylor's attempts to summarize or paraphrase the statute.
31. 15 USC § 1692b(2) speaks for itself and H&H objects to Taylor's attempts to summarize or paraphrase the statute.
32. Deny.

### b. FDCPA § 1692c

33. 15 USC § 1692c speaks for itself and H&H objects to Taylor's attempts to summarize or paraphrase the statute.
34. 15 USC § 1692c(b) speaks for itself and H&H objects to Taylor's quotation of the statute, as the quotation omits an exception.
35. Deny.
36. H&H objects to the allegation on the basis that there is no 15 USC § 1692c(1). To the extent that plaintiff intended to cite § 1692c(a)(1), the statute speaks for itself and H&H objects to Taylor's attempts to summarize or paraphrase the statute.
37. Deny.
38. 15 USC §§ 1692b, § 1692c, and § 1692k speak for themselves and H&H objects to Taylor's attempts to summarize or paraphrase the statutes. Although not alleged in this paragraph, in an excess of caution H&H denies

that it failed to comply with any provision of the FDCPA and denies that it is liable to plaintiff in any amount. Regarding the "wherefore" portion of paragraph 38, it appears to be a misplaced prayer; a prayer, not being part of the allegations, requires no response. In an excess of caution, to the extent that plaintiff intends any part of the "wherefore" portion to include any allegations, H&H denies any wrongdoing and denies any liability.

## COUNT II

Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 *et seq.*)

39. H&H incorporates all prior paragraphs herein.
40. California Civil Code § 1788.17 speaks for itself and H&H objects to Taylor's attempts to summarize or paraphrase the statute.
41. Deny. Regarding the "wherefore" portion of paragraph 41, it appears to be a misplaced prayer; a prayer, not being part of the allegations, requires no response. In an excess of caution, to the extent that plaintiff intends any part of the "wherefore" portion to include any allegations, H&H denies any wrongdoing and denies any liability.

## **AFFIRMATIVE DEFENSES**

1. If any violation of statute is found to have occurred, the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

## **PRAYER FOR RELIEF**

H&H respectfully requests that plaintiff take nothing and that judgment be entered in Hunt & Henriques's favor.

/s/ KAJ

Dated: November 30, 2020  _____
Kurtiss A. Jacobs, LL.M. / Donald Sherrill, Esq.
Attorneys for Hunt & Henriques

# CERTIFICATE OF SERVICE

Re:  Kuiana Taylor v. Hunt & Henriques, Inc.

Case Number: 2:20-CV-2309-TLN-KJN
United States District Court, Eastern District of California

I, the undersigned, declare as follows:

On the date below, I electronically filed with the Court through its CM/ECF program and served through the same program the following:

- **Hunt & Henriques's Answer to Complaint**

on the interested parties in said case as follows:

Nicholas M.Wajda, Esq.
6167 Bristol Parkway, Suite 200
Culver City, CA 90230
nick@wajdalawgroup.com

*Attorneys for Plaintiff Kuiana Taylor*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: December 1, 2020

/s/
_____
Samantha Downey
Hunt & Henriques